**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**RITAI SU**,

　　　　　　Plaintiff,

　　　　　v.

**UNITED STATES DEPARTMENT OF JUSTICE**, et al.

　　　　　　Defendants.

---

Case No. 1:25-cv-03412 (TNM)

**MEMORANDUM ORDER**

A Georgia company wants to employ Ritai Su, an engineer from China, so it filed a visa petition with the Department of Homeland Security on his behalf.  But the company paid petition fees to the wrong agency and corrected its mistake too late, resulting in the petition's rejection.  That rejection drove Su to this Court.  He brings various claims against the Department of Justice and the U.S. Citizenship and Immigration Services ("USCIS"), a DHS component, under the Administrative Procedure Act in hopes of getting another look at his petition.

But whatever the merits of his claims, Su faces an insurmountable problem at the threshold.  No part of the petition process took place in Washington, D.C.  More, USCIS sits in Maryland, not Washington.  And while DOJ is in the District, it had no role in the petition decision.  With neither a plaintiff, nor a properly named defendant, nor a claim based on events that occurred in this district, venue is improper.  Although the defect permits this case's dismissal, the Court instead transfers to the Northern District of Georgia in the interest of justice.  It therefore grants the Government's Motion to Dismiss insofar as it seeks to transfer this case.

**I.**

The Immigration and Nationality Act ("INA") provides visas for a limited number of temporary foreign workers with a "specialty occupation."  8 U.S.C. § 1101(a)(15)(H)(i)(b).  Obtaining one of these so-called "H-1B" visas is no easy feat.  The H-1B visa cap tops at 85,000, *id.* § 1184(g)(1), and for nearly three decades, demand has exceeded this limit.  89 Fed. Reg. 7456, 7458 (Feb. 2, 2024).

DHS prescribes many requirements for H-1B applications.  Only a few are relevant to Su's case.  First, applicants apply through a "petition" submitted by the "importing employer."  8 U.S.C. § 1184(c)(l).  H-1B visa petitioners must pay several fees with their application.  *Id.* § 1184(c)(9); 8 C.F.R. §§ 103.2(a)(1), 106.2(a)(3)(i).  Regulations also clarify that DHS considers applications properly "submitted" to USCIS on the "actual date of receipt."  8 C.F.R. § 103.2(a)(7)(i).  At that time, USCIS will assign an application a filing date unless it rejects that application.  *Id.* § 103.2(a)(7)(i)–(ii).  DHS states that USCIS "will" reject applications that are not: (1) "filed in compliance" with governing regulations and (2) "submitted with the correct fee(s)."  *Id.* § 103.2(a)(7)(ii)(C)–(D).[1]

Su's experience confirms that the rules have bite.  He is a Chinese national and engineer who works for a Georgia-based company, Hanwha Q Cells Georgia, Inc.  Compl. ¶ 5, ECF No. 1.  In spring 2025, USCIS notified Hanwha that it could file an H-1B visa petition on Su's behalf

---

[1]  Although the INA refers only to the Attorney General's decisions, courts treat the INA's references to the Attorney General as encompassing actions DHS takes to enforce immigration law.  *See, e.g.*, *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 n.1 (2021); *Nielsen v. Preap*, 586 U.S. 392, 397 n.2 (2019).  That is because Congress transferred INA enforcement authority from Justice Department entities to DHS when the latter was created.  *See* Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7, § 105, 117 Stat. 11, 531 (codified at 8 U.S.C. § 1103); Homeland Security Act of 2002, Pub. L. No. 107-296, § 441, 116 Stat. 2135, 2192 (codified at 6 U.S.C. § 251).

during a window ending on June 30, 2025. *Id.* ¶¶ 36–37. Three days before that window closed, Hanwha submitted Su's petition and filing fees, and USCIS received it on the same day. *Id.* ¶ 38; *see* Rejection Notice at 119, ECF No. 1-4 (reflecting receipt date). But Hanwha made out the fees check to the Department of Education, not DHS. Compl. ¶ 39. USCIS alerted Hanwha of the error a few days later, and Hanwha followed up with a corrected check about two weeks later. *Id.* ¶¶ 40, 42. But the check was too late. Hanwha's initial application deadline had passed, so the USCIS rejected the petition as untimely. *Id.* ¶ 43.

Su turned to this Court hoping to undo that decision. He sues DOJ and USCIS (collectively, "the Government"), bringing multiple claims under the APA. *Id.* ¶¶ 53, 56, 57. He argues: (1) that DOJ unlawfully promulgated the governing regulation decades ago; (2) that USCIS unlawfully rejected his petition for failure to correctly pay fees; and (3) that USCIS should have equitably tolled the deadline for his second petition rather than rejecting it. *Id.* The Government moved to dismiss, or to transfer the case to the Northern District of Georgia. *See* Defs.' Mot. to Dismiss or Transfer ("Defs.' Mot."), ECF No. 11. The motion is ripe, and the Court considers it now.

## II.

In its motion to dismiss or transfer, the Government invokes Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6). Defs.' Mot. at 15–16. The Court resolves this case on only Rule 12(b)(3).[2]

---

[2] The Court may decide a venue issue before deciding whether it has subject matter jurisdiction. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (cleaned up)); *Brodt v. Cnty. of Harford*, 10 F. Supp. 3d 198, 200 (D.D.C. 2014).

Rule 12(b)(3) authorizes dismissal for improper venue.  Similarly, 28 U.S.C. § 1406(a) requires the Court to "dismiss, or if it be in the interest of justice, transfer," a case "filed . . . in the wrong division or district."  Together, "[s]ection 1406(a) and Rule 12(b)(3) allow dismissal only when venue is wrong or improper."  *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013) (cleaned up).  "Whether venue is wrong or improper depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws."  *Id.* (cleaned up).

"In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor."  *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011).  The plaintiff has the burden to establish that venue is proper since it is his "obligation to institute the action in a permissible forum."  *Id.*  "Unless there are pertinent factual disputes to resolve, a challenge to venue presents a pure question of law."  *Id.*

The Court concludes that the District of Columbia is an improper venue for Su's challenge, and, in the interest of justice, will transfer his case to the Northern District of Georgia under 28 U.S.C. § 1406(a).  It takes both parts of the venue analysis in turn.

## A.

Consider first whether venue is proper in this district.  When a plaintiff sues federal agencies or federal officials, venue is proper in any judicial district where: (1) "a defendant in the action resides"; (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated"; or (3) "the

plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1).  The U.S. District Court for the District of Columbia checks none of these boxes.

For starters, Su does not reside here.  *See* Compl. at 1 (listing residence in Cartersville, Georgia); I-29 Form at 14, ECF No. 1-4 (same).  More, the submission and rejection of Su's application—the main events "giving rise" to his claim—occurred in Georgia and Texas respectively.  28 U.S.C. § 1391(e)(1); Rejection Notice at 119 (listing USCIS Office in Dallas, TX); I-29 Form at 12 (listing employer address in White, Georgia).

Left only with the possibility of a defendant who resides in this district, Su comes up short.  Recall that he sues USCIS and DOJ.  Since 2020, USCIS headquarters have sat in Camp Springs, Maryland.  *See Melnattur v. USCIS*, No. 20-3013, 2021 WL 3722732, at *3 n.4 (D.D.C. Aug. 23, 2021) (transferring suit and noting that "although USCIS used to be headquartered in Washington, D.C., the agency recently moved its headquarters to Camp Springs, Maryland, effective December 2020" (emphasis omitted)); *Wei Lai Dev. LLC v. USCIS*, No. 21-0887, 2021 WL 2073403, at *3 n.5 (D.D.C. May 24, 2021) (same).  USCIS's location thus does not anchor Su's claim to the District.

And though the DOJ is local, naming that agency as a defendant does not help Su.  "[I]n this circuit," home to many federal agencies and officials, courts must scrutinize "venue to guard against the danger that a plaintiff might manufacture venue in the District of Columbia."  *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993).  Indeed, if "the only real connection the lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing the administrative process, venue is not appropriate in the District of Columbia."  *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 19 (D.D.C. 2008) (cleaned up).

But DOJ does not even have that degree of a "real connection" to Su's case. *Id.* (cleaned up). It had no role in either rejecting his petition or in "regulating and overseeing" the petition process more generally. *Id.* (cleaned up). Indeed, for over twenty years, DHS has adjudicated H-1B visa petitions, not DOJ. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 1517, 116 Stat. 2135, 2311 (2002) (codified at 6 U.S.C. § 557); 8 U.S.C. § 1103(a). Absent some closer connection to DOJ, the Court would have to "manufacture" venue to keep Su's case. *Cameron*, 983 F.2d at 256. Su's case "properly should be pursued elsewhere." *Id.*

Su counters that events giving rise to his claims occurred here because decades ago, the regulation he challenges was promulgated in Washington. Pl.'s Opp'n. at 6–7, ECF No. 13. But to establish venue this way, the relevant location must be the site of a "*substantial* part of the events or omissions giving rise to the claim." *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 190 (D.D.C. 2018) (emphasis in original) (cleaned up). "Peripheral and tangential events occurring in the district will not establish venue." *Id.* That is a problem for Su. He had no legal challenge to the rulemaking upon its promulgation. Rather, Su's claim arose *decades* later, after his petition's denial. Indeed, the Court doubts Su could have shown that the rule affected him "in a personal and individual way"—as Article III demands to prosecute a suit—without the petition application and denial. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992). And that petition process began in Georgia, where his employer applied on his behalf, and finished in Texas, where USCIS considered and denied his petition. *See Nat'l Assoc. of Home Builders v. EPA*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009) (emphasizing the pertinent "decisionmaking process" when considering where a claim arose); Rejection Notice at 119. Only at that point could Su legally challenge the governing rule. So even if Su would have no

6

suit without this rule promulgated in Washington, that connection to his case is too

"[p]heripheral" to establish venue in this district. *Cockrum*, 319 F. Supp. 3d at 190.

More, none of the cases Su cites suggest that venue is proper wherever a rule was

promulgated. Rather, all involve a challenge to discrete decisions that took place here. Take

*National Association of Home Builders v. EPA*, 675 F. Supp. 2d 173 (D.D.C. 2009). There, the

court treated venue as proper in this district when a plaintiff challenged an EPA and Army Corps

of Engineers water-designation decision made in Washington. *Id.* at 175, 179. Or look to

*Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124. Those plaintiffs challenged a

U.S. Forest Service decision to reissue a grazing permit. *Id.* at 126–128. The *Bosworth* court

rejected the Forest Service's transfer request in part because "federal government officials in the

District of Columbia were involved in the decision to reissue" the permit. *Id.* at 128–29. The list

goes on. *See Stern v. Fed. Bureau of Prisons*, 515 F. Supp. 2d 153, 154–156 (D.D.C. 2007)

(declining to transfer a challenge to the Federal Bureau of Prisons' authority to set restitution

payment schedules where the D.C.-based Bureau itself "enrolled the plaintiff" in his restitution

payment program); *Akiachak Native Cmty. v. DOI*, 502 F. Supp. 2d 64, 67–68 (D.D.C. 2007)

(challenging a DOI regulation that allows the DOI itself to make decisions about Indian land

acquisition). Unlike these cases, the discrete decision-making process that prompted Su's case

occurred in Texas, not here. Challenging a rule that DOJ has not administered in over a

generation will not render the District of Columbia a proper venue.

**B.**

Having concluded that this district is the wrong venue for Su's claims, the Court now

considers whether to dismiss Su's claims or transfer them to a proper venue. *See* 28 U.S.C.

§ 1406(a). Section 1406(a) permits the Court to transfer a case for which venue is improper to

any district where the plaintiff could have brought his claim. *Id.* The Court must transfer the case if it is "in the interest of justice." *Id.* "The decision whether a transfer or a dismissal is in the interest of justice . . . rests within the sound discretion of the district court." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983). That said, in the § 1406(a) setting, "the interest of justice generally requires transferring a case to the appropriate judicial district in lieu of dismissal." *Ellis-Smith v. Sec'y of the Army*, 793 F. Supp. 2d 173, 177 (D.D.C. 2011); *see Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962). Su could have brought his case in the Northern District of Georgia, and the interest of justice favors transfer there.[3]

First, Su could have sued in the Northern District of Georgia. Recall that under § 1391(e), venue is appropriate where a "substantial part of the events" giving rise to the claim occurred. 28 U.S.C. § 1391(e). Courts applying this test in visa denial cases have deemed the location of the relevant job an appropriate venue. *See Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 332 (D.D.C. 2020) (explaining that "the factual basis necessitating the petition in the first place concerns [an employee's] continued employment with Plaintiff in the Central District of Illinois.").

Su works for a Georgia-based company and seeks an H-1B visa to facilitate his continued work there. Compl. ¶¶ 5, 45. And the Court sees no personal jurisdiction problem in the Northern District of Georgia given the Government's support for the transfer. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("[R]egardless of the power of the State to serve process, an individual may submit to the jurisdiction of the court by appearance."); Def.'s Mot. at 19–25 (requesting transfer to the Northern District of Georgia

---

[3] Neither the Government nor Su asks the Court to consider transferring the case to the Northern District of Texas (where USCIS rejected Su's petition), so the Court does not consider that possibility.

under 28 U.S.C. § 1404(a) should the Court find venue in the District for the District of Columbia proper). Because Su's employer sits there and the Government does not oppose, Su could have sued in in the Northern District of Georgia.

Next, the interest of justice counsels transfer to the Northern District of Georgia instead of dismissal. Generally, transfer is in the interest of justice when it would save the parties the time and expense associated with refiling, *see, e.g.*, *Cap. Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 78 (D.D.C. 2003), and where "transfer would not prejudice the defendants' position on merits." *Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C. Cir. 1983); *see, e.g.*, *Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F. Supp. 3d 207, 219 (D.D.C. 2014). Here, a transfer would prevent Su from having to restart his case, as he would if the Court dismissed it. Transfer also does not risk prejudice to the Government, who, again, supports transfer. *See* Def.'s Mot. at 19–25. The Court sees no other reason the parties cannot "efficiently litigate[]" this matter in the Northern District of Georgia, and the parties have highlighted none. *Sinclair*, 711 F.2d at 294. Given the preference for transfer over dismissal when "procedural obstacles" like improper venue prevent adjudication here, *see Goldlawr*, 369 U.S. at 466–67, the Court will transfer this matter to the Northern District of Georgia.

## III.

For these reasons, the Court transfers Su's case. It is hereby

**ORDERED** that the [11] Motion to Dismiss is GRANTED IN PART insofar as it seeks to transfer the case to the United States District Court for the Northern District of Georgia; and it is further

**ORDERED** that the Clerk of Court will transfer this matter to the United States District Court for the Northern District of Georgia; and it is it is further

9

**ORDERED** that the Government's time to respond to the Complaint is extended through, and including, 21 days after this action is docketed in the United States District Court for the Northern District of Georgia.

**SO ORDERED**.

Dated: April 2, 2026

_____
TREVOR N. McFADDEN, U.S.D.J